Girard Trust Co. *v.* Delaware & Hudson Company, . Appellant.

*Mines and mining — Coal leases — Construction — Royalties — Equity—Accounting.* ·

1. Even where a lessor of coal by receipting in full for a lesser amount of coal than he claimed he was entitled to receive, waives the right of himself and his heirs to recover the correct amount,

his conduct can not be considered such an interpretation of the. lease as to prevent his descendants who are his legal representatives from asserting a different interpretation of the lease.

2. In a suit in equity for an accounting for coal mined and removed by defendants from a certain tract of coal lands, where the issue was the right of the plaintiff to recover for coal so small as to pass through a five-eighth-inch mesh, and where it appeared that plaintiff's ancestor had been the tenant in common of such lands with a coal company, that in 1871 the coal company granted to defendant the right to mine coal from the land so held by it as tenant in common with plaintiff's ancestor, with the consent of the latter; that defendant accounted to him every three months for coal mined from the premises but paid only for coal which passed over a five-eighth-inch mesh; that in quarterly statements of tonnage mined rendered to him, no mention was made of the size of the coal mined and removed, nor was there any suggestion that the smaller size was not included in the total amount accounted for; that in 1878 he executed a further agreement, the primary purpose of which was to grant to the defendant the right to mine coal underlying a five-acre tract belonging to him in fee, under the express provision that "any coal which will pass through a five-eighth-inch mesh is not to be paid for," which contract contained a further provision granting to defendant the right to continue to mine the coal from the land so held by the coal company and himself as tenants in common, paying to him, his heirs and assigns at the rate of twenty-five cents per ton for his proportion of the coal so mined as heretofore, "and according to their established usage and practice......"; and that in another part of the said agreement the phrase "in accordance with their usual conditions and practice" appeared, relating to the coal held by him as tenant in common, it was held that neither the language of the grant nor the dealing of the parties indicated an intention to give the lessees the smaller sizes of coal passing through the five-eighth-inch screen for nothing and that the plaintiff was not estopped from claiming payment for the smaller sizes of coal.

3. In such case the evidence is not sufficient to charge plaintiff's ancestor with notice that the lessee was appropriating the smaller sizes of coal without paying for the same, and under these circumstances it could not be said that he was bound by the practice which the lessee company adopted but about which he was not informed, and the same is true as to any alleged waiver of his right to claim royalties in addition to what he had received.

Argued April 15, 1914. Appeal, No. 70, Jan. T., 1914, by plaintiffs, from decree of C. P. Luzerne Co., March T.,

1912, No. 2, in Equity (Stating account) in case of Girard Trust Company of Philadelphia, trustee of estate of Clorinda W. Stearns, deceased; Elizabeth S. Dickerman, William G. Phelps, executor of estate of Carolina S. Phelps, deceased; Cornelia W. Shoemaker, executrix of estate of Levi D. Shoemaker, deceased; Jane R. Shoemaker, and Esther W. Norris v. Delaware and Hudson Company. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an accounting for coal mined and removed by defendant. Before STRAUSS, J.

From the record it appeared that prior to 1871, the Northern Coal & Iron Company and L. D. Shoemaker, the ancestor of plaintiffs, owned as tenants in common about 950 acres of land in the Township of Plains, Luzerne County.

In the year 1871 said company granted to defendant the right to mine the coal from the premises mentioned, with the consent and concurrence of the company's cotenant, Shoemaker.

This defendant regularly accounted to Mr. Shoemaker every three months for the proportion of the coal larger than pea mined therefrom paying at the rate of twenty-five cents per ton for such coal that passed over a five-eighth-inch square mesh, but gave out no information relative to the smaller sizes passing through said mesh which it appropriated without paying any royalty for the same.

In 1878, Shoemaker, who owned in severalty five acres located in the midst of the 950 acres, granted the coal on said five acres to defendant, to be paid for at the rate of twenty-five cents per ton, and he expressly agreed that:

"Any coal which will pass through a five-eighth-inch square mesh is not to be paid for."

This lease recited that the defendant has mined and is mining the coal from the surrounding land held in

common "with the consent and concurrence of Shoemaker," the defendant "paying and has paid to Shoemaker for his proportion of the coal heretofore mined from the land so held in common at the rate of twenty-five cents per ton, and in accordance with their usual condition and practice."

The terms of said coal lease provided:

"It is further agreed that the said party of the second part (defendant) may continue to mine the coal from the land so held (in common)......paying the said Shoemaker, his heirs and assigns, at the rate of twenty-five cents per ton for his proportion of the coal so mined, as heretofore, and according to their established usage and practice."

From the time of this agreement the coal from the five acres was mined, together with the coal from the land held in common, and was all commingled in preparation at defendant's several breakers.

As had previously been the practice, statements were regularly sent to Shoemaker up to the time of his death and thereafter to his heirs, the plaintiffs, covering a period of some forty years, and embracing in the statements the number of tons of sizes larger than pea mined from the five acres, as well as the number of tons of sizes larger than pea mined from the land in common, but such statements gave out no information relative to the smaller sizes which defendant company was appropriating without paying any royalty for the same.

Other facts appear in the opinion of the Supreme Court.

The court directed an accounting and on final hearing found that plaintiff was entitled to a decree for $33,-633.71 with interest.   Defendant appealed.

*Errors assigned,* among others, were in dismissing exceptions to various findings of fact and law of the trial judge and the decree of the court.

*George R. Bedford* and *James H. Torrey,* for appellant, cited: Wright v. Coal Company, 182 Pa. 514.

*F. W. Wheaton* and *William C. Price,* for appellee, cited: Funk v. Haldeman, 53 Pa. 229; Neumoyer v. Andreas, 57 Pa. 446; Hollenback Coal Co. v. Coal Co., 219 Pa. 124; Barnsdall v. Bradford Gas Co., 225 Pa. 338; Genet v. Delaware & Hudson Canal Co., 32 N. E. Repr. 1078; Erwin's App., 20 W. N. C., 278; Dunham v. Haggerty, 110 Pa. 560.

OPINION BY MR. JUSTICE ELKIN, July 1, 1914:

This bill was filed for an accounting for coal mined and removed by defendant and not paid for. There is no substantial dispute about the facts and the case turns upon the interpretation of the contract between the parties. The agreement is in writing and was executed July 16, 1878. The clause which forms the basis of this litigation provides as follows: "And further it is hereby agreed, that the said party of the second part may continue to mine the coal from the lands so held by the Northern Coal & Iron Company and the said Lazarus D. Shoemaker as tenants in common, paying to the said L. D. Shoemaker, his heirs or assigns, at the rate of twenty-five (25) cents per ton for his proportion of the coal so mined as heretofore and according to their established usage and practice and without any liability for any damage that may occur from mining and removing the coal, or any part thereof in or from said land so as aforesaid held in common or for the occupation and use of the surface thereof." The primary purpose for executing the agreement of 1878 seems to have been to grant or lease all the merchantable coal underlying a certain five-acre tract of land belonging to L. D. Shoemaker, but which was independent of and had no connection with the interest held by him as tenant in common in the coal which forms the subject matter of the present controversy. In 1871 the Northern Coal &

Iron Company granted appellant the right to mine coal from the lands held by it as tenant in common with Shoemaker, and this was done with the consent of the latter. Under that lease appellant accounted to Shoemaker every three months for the coal mined from the premises at the rate of twenty-five cents per ton for his proportion thereof. It is true that under the lease of 1871, the lessee only paid for the coal which passed over a five-eighth-inch mesh, but in the quarterly statements rendered from time to time to Shoemaker during the entire period no mention was made of the sizes of coal mined and removed, nor was there any suggestion or notice that the smaller sizes were not included in the total amount accounted for. These statements simply showed the total number of tons accounted for during the quarter without specifying sizes. This was the situation when the agreement of 1878 was entered into. Appellant insists upon its right to take all the coal that passes over or through the mesh by paying at the rate of twenty-five cents per ton for the larger sizes of coal passing over the mesh. If this interpretation be sustained it means that the lessee can appropriate the pea and smaller sizes of coal without paying anything for the same. The real question for decision is whether the contracting parties so covenanted, or perhaps whether by their acts they placed such a construction upon their agreement. We find nothing in the clause above recited, or in any other part of the agreement relating to the coal underlying the land held by the parties as tenants in common, to indicate an intention to give the lessee the pea and smaller sizes of coal for nothing. The agreement did not constitute a sale of the coal in place. A contract regarding coal in place may be a sale absolute, a conditional sale, a lease in the ordinary acceptation of that term, or a mere license to mine and remove the minerals: Neumoyer v. Andreas, 57 Pa. 446; Denniston v. Haddock, 200 Pa. 426; Gallagher v. Hicks, 216 Pa. 243; Hollenback Coal Co. v. Coal Company, 219 Pa.

124; Barnsdall v. Gas Company, 225 Pa. 338. We do not deem it important to define in precise terms what kind of an interest the lessee took under the agreement in question. It certainly did not constitute a sale of the coal in place, nor was it a conditional sale, and as we view it, there is no warrant for the contention that the lessee took title to all the coal mined from the premises by simply paying for the larger sizes which passed over the five-eighth-inch mesh. To adopt such an interpretation it is necessary to read into the contract what the parties themselves did not insert. We cannot agree that the provisions relating to the five-acre tract should be read into the clause under consideration. The parties were dealing with two different tracts of land and made different provisions respecting each. The smaller tract was held by Shoemaker in fee, while his interest in the larger tract was that of a tenant in common. The fact that the contracting parties made different provisions respecting the tracts is a sufficient answer to the suggestion that they intended both tracts to be operated upon the same terms and conditions. As to the five-acre tract the agreement stipulated that all coal passing over a five-eighth-inch mesh should be paid for, and all coal passing through the mesh should not be paid for, but as to the property held in common, being the one in controversy, there is no stipulation as to sizes of coal, nor any suggestion that the lessee should have any coal without paying for the same.

It is argued that the phrase "in accordance with their usual conditions and practice" which appears in another clause of the lease relating to the coal held by Shoemaker as tenant in common, was intended to include in the agreement of 1878 the "conditions and practice" which the lessee company adopted as to sizes of coal to be paid for under the lease of 1871. The same argument is made as to the phrase "according to their established usage and practice" which appears in the clause hereinbefore set out. As to this contention the learned court

below said: "Neither of these phrases, however, on casual reading, or after careful analysis of the evidence, or of the instrument itself, shows an intention to reduce the measure of payment to the basis of coal in larger sizes only." The evidence is not sufficient to charge Shoemaker with notice that the lessee was appropriating the smaller sizes of coal without paying for the same. The quarterly statements contained no such notice and there is no other evidence that he knew or was informed of any such practice. Under these circumstances it cannot be said that he was bound by a practice which the lessee company adopted, but about which he was not informed. The same may be said as to the suggestion that he waived his right to claim royalties in addition to what he had received, and was estopped by his acts from now claiming payment for the smaller sizes of coal. He could not be estopped by the acts of the other party to the contract of which he had no knowledge. On the question of estoppel the following cases are in point: Dunham v. Haggerty, 110 Pa. 566; Hoyt v. Kingston Coal Co., 212 Pa. 205. Even where a lessor by receipting in full for a lesser amount of coal than he claimed he was entitled to receive waives the right of himself and his descendants to recover the correct amount, yet his conduct cannot be considered such an interpretation of the lease as to prevent his descendants, who are his legal representatives, from asserting a different interpretation of it: Wright v. Coal Co., 182 Pa. 514. In the case at bar Shoemaker did not receipt in full for all sizes of coal mined and removed. He only receipted for the number of tons of coal which the lessee accounted for without specifying sizes.

After a careful consideration of this entire record we have concluded that the learned court below properly decided the case under the facts as well as the law. The learned chancellor gave the case intelligent and exhaustive consideration and reached a conclusion that accords with right and reason, and does no violence to es-

tablished rules of law. We find nothing in the record to warrant a reversal of the decree.

Decree affirmed at cost of appellant.