608 A.2d 1074

**James C. HETRICK and Clara A. Hetrick, Appellants,**

**v.**

**APOLLO GAS COMPANY, a Corporation.**

Superior Court of Pennsylvania.

Argued Dec. 11, 1991.

Filed May 13, 1992.

George D. Kulakowski, Punxsutawney, for appellants.
John Porter, Pittsburgh, for appellee.

Before ROWLEY, President Judge, and KELLY and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from an order granting summary judgment in favor of defendant/appellee, Apollo Gas Company. For the reasons appearing below, we affirm.

The events underlying the instant appeal began in May of 1917, when Clara Niel, a predecessor in title to an estate in land currently owned by plaintiffs/appellants, James and Clara Hetrick, entered into a drilling agreement with Mahoning Gas and Oil Company (hereinafter "Mahoning").[1] Cast in the form of an oil and gas lease, the document signed on May 3, 1917, gave Mahoning the right to drill wells and extract oil and gas from the Niel property in exchange for the payment of certain moneys on a regular schedule. James and Clara Niel, as well as their successors in interest, were also entitled to take 200,000 cubic feet of natural gas per calendar year free of charge to use on the premises for domestic purposes. Appellants have not alleged any default regarding the timely payment of royalties by appellee and its predecessors in interest; however, the instant case does raise a question concerning the acquisition of free natural gas by appellants and their predecessors in interest.

In an attempt to prevent appellee from extracting further minerals under color of the purported 1917 agreement and to enforce what they view as their cumulative right to free natural gas, appellants filed a complaint in equity seeking

1. Through a series of assignments, appellee Apollo Gas Company acquired the status of successor in interest to Mahoning with regard to the 1917 agreement.

both money damages and a prohibitory injunction.[2] Appellants have proceeded under two theories of entitlement in the instant action. First, they contend that the drilling agreement signed by Clara Niel was not a lease but was actually an attempt to convey a mineral estate in fee simple. The crux of this argument is that the document signed in 1917 must be treated as a failed deed, void under the Married Women's Property Act of 1893,[3] because Clara Niel's alleged husband James never signed it. Consequently, appellants' claim that the rights of the parties in the instant action are governed by the common law of corporeal interests in land rather than by the terms of the agreement signed in May of 1917. Second, appellants argue that they have the right to receive cumulative arrearages amounting to 7,000,000 cubic feet of free natural gas which they allege accrued between 1917 and the date on which natural gas service was actually connected to their domicile.[4] Appellants contend that since 1975, they have been unfairly required to pay for gas use in excess of 200,000 cubic feet per calendar year, despite the many years in which appellee failed to supply any free natural gas. They further aver that they have made the allegedly unjust payments to Apollo Gas Company, albeit under protest.

After a trial schedule was established and discovery was accomplished, appellee filed a motion for summary judgment. Appellee's motion was granted on March 14, 1991 and the instant timely appeal followed by which appellants raise two issues for our consideration: (1) whether an agreement which provides for gas and oil drilling for a term

2. *Inter alia,* appellants' complaint requested the trial court to ascertain the fair market values allegedly owed to appellants for minerals extracted at various times by appellee, and to enjoin appellee from terminating gas service to appellants at their residence. Appellants also petitioned the court for an injunction to prevent appellee from drilling any additional wells.

3. 48 P.S. §§ 31–32; Act of June 8, 1893, P.L. 344 §§ 1–2, amended 1945, 1947 and 1951 (repealed 1957).

4. The date on which service commenced appears to be disputed by the parties. However, because our resolution of the underlying issue does not hinge on this point, it need not be resolved here.

of fifteen years, and as long thereafter as oil or gas is produced in "paying quantities" constitutes a conveyance in fee of such oil and gas; and (2) whether a contract right for a specified amount of free gas each year is cumulative. These challenges to the lower court's ruling must be evaluated under the relevant standard of review as set forth by the Pennsylvania Supreme Court:

> Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. [No.] 1035(b) [, 42 Pa. C.S.A.] An entry of summary judgment may be granted only in cases where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co., Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989). The moving party has the burden of proving the nonexistence of any genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 202–204, 412 A.2d 466, 468–69 (1979). The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil Co.*, 438 Pa. 194, 264 A.2d 597 (1970).

*Marks v. Tasman*, 527 Pa. 132, 134–35, 589 A.2d 205, 206 (1991). *See Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 176, 553 A.2d 900, 903 (1989) (entire record before lower court must be thoroughly examined and all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment). An appellate court will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank*, 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988).

Appellants first argue that the written agreement concluded on May 3, 1917 between Mahoning and Clara Niel must be deemed a deed and not a lease. Under this theory,

the purported agreement is rendered void and of no legal effect because only Clara Niel actually signed the document and her action was never ratified by her alleged husband. Appellants contend that based on the behavior of the parties following May 3, 1917, the transaction which transpired constituted the conveyance of a mere corporeal interest in the natural gas actually transferred to Mahoning and its various successors in interest.[5] Thus, appellants urge this court to vacate the lower court's order entering summary judgment against them. However, in order to grant appellants the relief they seek with regard to their first claim, we must arrive at two legal conclusions not reached by the trial court. First, we would have to determine that the agreement in question was a failed conveyance of the mineral estate in fee simple rather than a fully consummated conveyance of a leasehold in the mineral estate. Second, we must conclude that the Married Women's Property Act of 1893, *supra*, required both James and Clara Niel to sign the challenged contract in order to give it legal effect.

 Pennsylvania law recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. *Gioia v. Gioia*, 382 Pa.Super. 538, 547 n. 4, 555 A.2d 1330, 1335 n. 4 (1989), *citing Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 304, 32 A.2d

---

**5.** The older cases dealing with oil and gas leases frequently turn on procedural distinctions peculiar to incorporeal hereditaments, ("a right issuing out of a thing corporate") as opposed to actual corporeal interests in land. *See, e.g., Hicks v. American Natural Gas Co.*, 207 Pa. 570, 576–77, 57 A. 55, 57 (1904) (action in ejectment cannot be maintained on an oil or gas contract in the form of an incorporeal hereditament but may lie if brought as of right by one who holds "the title of the corporate thing"). *See also McKean Natural Gas Co. v. Wolcott*, 254 Pa. 323, 326, 98 A. 955, 956 (1916) (an oil and gas lease is not a mere license, but creates in the lessee a corporeal interest in the land); *Chicago & Allegheny Oil & Mining Co. v. U.S. Petroleum Co.*, 57 Pa. 83 (1868) (an agreement to lease land for a term of years, with the exclusive right to bore for and collect oil, giving one-fourth to lessor passes a corporeal interest); *Stockdale v. Sellers*, 102 Pa.Super. 447, 157 A. 30 (1931) (lease of oil and gas, together with land, for drilling purposes, requiring carrying rentals and royalties, creates corporeal interest in lessee). However, the distinction is without a difference as it pertains to the outcome of the instant case.

227, 234–35 (1943). Because these estates are severable, different owners may hold title to separate and distinct estates in the same land. *Id.* As appellants have correctly argued, the Pennsylvania rule permitting severance of the mineral estate for coal and other solid minerals applies with equal force to oil and gas. *Duquesne Natural Gas Company v. Fefolt,* 203 Pa.Super. 102, 105, 198 A.2d 608, 610 (1964). As with any estate in land, the owner of the mineral estate may convey his entire bundle of rights in fee or may grant a mere portion thereof via leasehold. *See id.* (quoting 24 P.L.E. Mining; Oil and Gas § 11 at 144). Unfortunately, under our law the precise nature of any particular agreement is a complex question because a document purporting to grant only a leasehold may in actuality constitute a sale of the mineral *in situ* which conveys a fee interest to the mineral estate in favor of the grantee. *See, e.g., Lichtenfels v. Bridgeview Coal Co.,* 344 Pa.Super. 257, 262–263, 496 A.2d 782, 785 (1985) (construing the legal character of a purported coal lease). Thus any court attempting to settle a controversy regarding the ownership of minerals in place must first determine the nature of the contract between the parties.

The seminal Pennsylvania cases construing the nature of mining agreements are *Benson v. Miners' Bank,* 20 Pa. 370 (1853), which held that an unrestricted right to take and carry away all the coal under a tract of land constitutes a corporeal right, and *Caldwell v. Fulton,* 31 Pa. 475 (1858), the landmark decision which interpreted a mining agreement as a sale of coal in place. However, more pertinent to our resolution of the issue before this court is the more recent case of *Hummel v. McFadden,* 395 Pa. 543, 150 A.2d 856 (1959). In *Hummel,* the Pennsylvania Supreme Court recognized that a mining agreement may constitute "a sale absolute, a conditional sale, a lease in the ordinary acceptance of that term, or a mere license to mine and remove the minerals." *Id.,* 395 Pa. at 553–54, 150 A.2d at 861, quoting *Girard Trust Co. v. Delaware & Hudson Company,* 246 Pa. 161, 166, 92 A. 129, 130 (1914). When determin-

ing the precise nature of a particular mining agreement, the form of the document employed and the language utilized are not themselves dispositive. *Id.*, 395 Pa. at 555, 150 A.2d at 861. Rather, "the *character* of the transaction [is] controlling." *Id.* (emphasis in original). In *Hummel*, the court found it highly material that the disputed mining agreements contained no minimum royalty payable upon sale of the coal, and failed to impose "any limitation in respect to the time, the quantity or the purpose of removal of the coal [or] upon the person who is to remove the coal." *Id.*, 395 Pa. at 556, 150 A.2d at 862. Because the agreements in question gave McFadden "full and complete dominion over the coal until the exhaustion thereof," they were deemed "sales of the coal in place." *Id.*

Transferring the principles enunciated in *Hummel* to the context of a drilling agreement for gaseous and/or liquid minerals is a difficult proposition. Owing to the marked differences in the nature of oil and gas and solid minerals such as coal, the rights of lessees in the respective minerals are not the same. *Appeal of Baird*, 334 Pa. 410, 6 A.2d 306, 311 (1939).[6] Thus, rules applicable to a particular type of mineral extraction contract cannot be applied indiscriminately to all instruments whether they amount to a license, a lease, a conditional sale or an absolute sale, and whether they concern solid minerals or minerals of the character of oil and gas. *Id. Accord Greek Catholic Congregation v. Wilson Coal Co.*, 329 Pa. 341, 198 A. 41 (1938); *Denniston v. Haddock*, 200 Pa. 426, 50 A. 197 (1901).

In general, it may be understood that a contract which grants the "exclusive right and privilege for digging and boring for oil and other minerals" for a certain term, is a lease for the production of oil and not a sale of the oil or an interest in the land. *Duffield v. Hue*, 129 Pa. 94, 107–09, 18 A. 566, 568 (1889). In 1939, our supreme court refined

**6.** In *Appeal of Baird*, the Pennsylvania Supreme Court adopted and incorporated by reference the opinion set forth at 132 Pa.Super. 573, 1 A.2d 485 (1938). Although the Superior Court opinion was reproduced at 6 A.2d 307 *et seq.*, it was not reprinted in volume 334 of the Pennsylvania State Reports.

this definition by holding that where the contract is "in the form of a grant and lease of land with the exclusive right and for the purpose of drilling for and producing petroleum and gas for a definite term 'and so long thereafter as oil or gas can be produced in paying quantities' and provides that one-eighth of the oil produced is to be delivered to the lessor in the pipe lines as produced, the right to receive that royalty is an incident to an estate in the oil and gas remaining in the grantor as an owner of land." *Appeal of Baird, supra,* 334 Pa. 410, 6 A.2d at 312. When determining the nature of the right or estate created by an instrument, the court will consider the document as a whole, without regard to its formal division into parts and may refer to the habendum clause when the terms of the grant under an oil and gas extraction agreement are ambiguous. *Irwin v. Hoffman,* 319 Pa. 8, 15–16, 179 A. 41, 45 (1935).

■ The certified record in this case contains a copy of the document signed by Mrs. Niel on May 3, 1917. In pertinent part it states that James and Clara Niel, "the first party," and Mahoning, the "second party,"

> Witnesseth, that the said first party for and in consideration of one dollar in hand paid by the said second party, the receipt whereof is hereby acknowledged, and the further consideration of the agreement hereinafter contained, to be done, kept and performed by said second party, hereby demises and *lets* unto said second party its successors or assigns, all that certain tract of land situated in Perry & W. Mahoning Township, Jefferson & Indiana county, Pennsylvania, bounded and described as follows: [legal description of tract] Containing Four Hundred (400) acres, more or less.
>
> TO HAVE AND TO HOLD the above described premises for the sole and only purpose of drilling and operating for oil and gas with the exclusive right to operate for same *for the term of fifteen years, and as long thereafter as oil or gas is produced in paying quantities* or operations for oil or gas are being conducted thereon, including the right to drill other wells, together with a right of way

for pipe lines to convey oil, gas, water or steam off, on or across the same as long as said second party, its successors or assigns, desires to maintain the same, also the right to operate any well on said premises. The party of the second party hereby agrees to made [sic] just compensation for any damages done to growing crops or improvements by said operations. The party of the second part also agrees to locate wells wherever convenient on land not tillable or under tillage.

IN CONSIDERATION of the above demise, said second party agrees to deliver in pipe line unto said first party the one-eighth part of the oil produced and saved from the premises.

Should any well not produce oil, but produce gas, and the gas therefrom be sold off the said premises, the consideration to said first party for the gas from each well from which gas is marketed shall be as follows: At the rate of One Hundred Seventy–Five ($175.00) dollars per year. While gas is being sold off these premises, said first party may have gas free of cost for domestic purposes on said premises to the extent of 200,000 cubic feet per year, said first party to make the necessary connections and assume all risk in using said gas. The said second party shall not be liable for any shortage, or failure in supply of gas for said domestic purposes caused by pumping gas from said premises or otherwise:

The said first party to have the free use and enjoyment of the premises except the part necessary for drilling and operating, and no wells to be drilled within two hundred feet of the buildings now on the *lease* without consent of said first party.

The said second party to have the free use of water and gas from the premises to run its machinery, and the right at any time during or after the term of this agreement to remove from the premises all machinery, pipe lines, buildings and fixtures belonging to it (including the right to draw and remove casing), whether placed thereon under this or any former *lease*.

Complaint filed February 13, 1985, "Exhibit A" (emphasis added). Appellee has conceded that although the document listed both James and Clara Niel as parties of the first part, Mr. Niel did not sign it. *See* appellee's brief at 8.

Styled in the form of a land-lease, the document signed by Mrs. Niel granted Mahoning the exclusive use of specifically described parcels of land for the sole purpose of "drilling and operating for oil and gas" for a term certain of fifteen years, "and as long thereafter as oil or gas is produced in paying quantities." This language is remarkably similar to that which the Pennsylvania Supreme Court found to be more consistent with a lease than with a fee simple conveyance in *Appeal of Baird, supra.* As the *Baird* court ruled, the grant of the exclusive right and privilege of digging and boring for oil and other minerals for a term certain plus "so long thereafter as oil or gas can be produced in paying quantities" must be treated as a lease and not as a sale of either the minerals or of an interest in the land. *Id.*

We note additionally that, as in *Baird,* the payment to Mrs. Niel and her successors in interest is cast in the form of rent or royalties which are conditioned upon the continuing production of oil and/or gas by Mahoning and its successors in interest.[7] As further evidence that the parties in the instant case intended a lease agreement rather than a fee conveyance, the granting clause employs the term "lets" rather than "grants." Moreover, twice within its final two paragraphs, the parties explicitly characterized the document in question as a "lease." It is true that under *Hummel v. McFadden, supra,* the form and language of the document which embodies a mining agreement are not dispositive regarding the nature of that agreement. However, upon due consideration of the material phrases employed to embody the mining agreement in this case, we conclude that the nature of the transaction between Clara

7. The instant lease states that one-eighth of the oil produced is to be delivered to the lessor in the pipe lines as produced. This provision is identical to the royalty clause in the contract construed in *Appeal of Baird.* Again as in *Baird,* the instant agreement also provides for payment of a suitable royalty should the wells yield gas instead of oil.

Niel and Mahoning Gas and Oil Company was the convey-
ance of a leasehold interest and not the granting of a fee
interest in the mineral estate.[8] We therefore hold that the
trial court was legally correct in deeming the document in
question to be a lease rather than an attempted conveyance
in fee simple.

 Having reached this determination, however, we
must now consider whether the 1917 contract was rendered
void under the Married Women's Property Act, *supra*,
because James Niel failed to add his signature to that of
Clara Niel. Unquestionably, at the time Clara Niel signed
the challenged document, the legal efficacy of her actions
were governed by the provisions of the Act. *See Bosses v.
Mahalsky*, 365 Pa. 184, 74 A.2d 93 (1950) (during the period
when the Married Women's Property Act was in effect, a
married woman lacked the capacity either to contract for
the sale of her land or to convey it except in the manner
prescribed by statute). Although the Act was amended in
1945, 1947 and 1951, its provisions were as follows on the
relevant date:

Hereafter *a married woman shall have the same right
and power as an unmarried person to* acquire, own,
possess, control, use, *lease*, sell or otherwise dispose of
any property of any kind, real, personal or mixed, and
either in possession or expectancy, and may exercise the
said right and power in the same manner and to the same
extent as an unmarried person, but she may not mort-

8. Appellants have cited *Pennsylvania Bank & Trust Co., Youngsville
Branch v. Dickey,* 232 Pa.Super. 224, 335 A.2d 483 (1975) as authority
for the proposition that an exclusive grant of the right to extract oil
and gas works a fee conveyance. While we agree that *Dickey* contains
such a holding, it is significant that the mining agreement construed
in that case lacked any variant of the qualifying phrase "so long ... as
oil or gas can be produced in paying quantities" which our supreme
court found to be crucial in *Appeal of Baird, supra.* Because the
document which embodies the agreement in the instant case contains
a variation of the material term limitation so conspicuously absent
from *Dickey,* we find the latter case inapposite to the present inquiry.
*Barnsdall v. Bradford Gas Co.,* 225 Pa. 338, 74 A. 207 (1909), also cited
by appellants, is distinguishable from the case *sub judice* on the same
basis as is *Dickey* and need not be considered further.

gage or convey her real property, unless her husband join in such mortgage or conveyance.

Hereafter *a married woman may, in the same manner and to the same extent as an unmarried person, make any contract in writing,* or otherwise, which is necessary, appropriate, *convenient or advantageous to the exercise or enjoyment of the rights and powers granted by the foregoing section,* but she may not become accommodation, indorser, maker, guarantor or surety for another, and she may not execute or acknowledge a deed, or other written instrument, conveying or mortgaging her real property, unless her husband join in such mortgage or conveyance.

48 P.S. §§ 31–32; Act of June 8, 1893, P.L. 344 §§ 1–2 (repealed 1957) (emphasis added). Although it is plain that under the Act, a married woman had no right to convey a fee interest in land, it is equally clear that the legislature intended to empower a married woman to execute, during coverture, a lease for her separately titled property. *See also Pedrick v. Gordin,* 382 Pa. 26, 114 A.2d 124 (1955) (discussing legislative intent re Married Women's Property Act in the context of the amended statute). Because the document executed by Mrs. Niel was a lease, and not a purported "deed, or other written instrument, conveying or mortgaging ... real property," its legal validity and enforceability were not automatically negated by operation of the Married Women's Property Act simply because Mr. Niel never signed it.[9] Thus appellant's argument in this regard must fail.

 Because of our resolution of appellants' first claim, we need not consider the third sub-point raised thereunder relating to the alleged creation of a co-tenancy between the Niels and Mahoning.[10] We may therefore move

---

**9.** Neither party has challenged Clara Niel's legal right to execute a *lease* absent written ratification by James Niel. That issue is consequently not before the panel and we will not consider it.

**10.** Appellants erroneously theorized that a co-tenancy.in the oil and gas estate arose when the fee conveyance between the parties alleged-

on to consider appellants' contention that their right to obtain free natural gas under the 1917 agreement is cumulative from that year. The relevant paragraph from the 1917 lease contains the following language:

> While gas is being sold off these premises, said first party [lessors and their successors in interest] may have gas free of cost for domestic purposes on said premises to the extent of 200,000 cubic feet per year, said *first party to make the necessary connections* and assume all risk in using said gas. The said *second party shall not be liable for any shortage, or failure in supply of gas for said domestic purposes* caused by pumping gas from said premises *or otherwise*[.]

Complaint filed February 13, 1985, "Exhibit A" emphasis added. Unfortunately for appellants, Pennsylvania law is clear that where a lease provides that the lessor shall have "gas free of cost" under an agreement such as the instant lease, the onus is upon the lessor to demand the gas and to put himself in a position to receive it "at or about the well." *Lewis v. United Natural Gas Co.*, 75 Pa.Super. 44, 50 (1920). Where a lessor fails to meet this burden, the lessee is not in default and the lessor is not entitled to recover the value of the gas so to be furnished. *Id.* Pennsylvania law thus provides that unused free gas allotments arising under a gas lease are not cumulative prior to the time the lessor puts himself in position to receive the gas "at or about the well." *Id.* In the instant case, the lease provides the added restriction that the *lessor* is responsible for making the necessary connections at the well-head. Further, the instant lease explicitly absolves the lessee from any liability stemming from a failure to supply gas. Under these circumstances, we cannot conclude that the trial court committed either a clear error of law or an abuse of discretion in declining to grant appellants' petition for cumulative gas rights accruing between 1917 and the tap-in date. We therefore affirm the grant of summary judgment.

Order affirmed.

ly failed resulting in the transfer of a corporeal interest in the natural gas.