J-A20008-18

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| JON HOLBERT CARTER AND PATRICIA W. CARTER, HIS WIFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| CONSOL PENNSYLVANIA COAL COMPANY, | |
| Appellant | No. 1196 WDA 2017 |

Appeal from the Order Entered August 7, 2017
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2010-9001

| | |
|---|---|
| JON HOLBERT CARTER AND PATRICIA W. CARTER, HIS WIFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| CONSOL PENNSYLVANIA COAL COMPANY, | |
| Appellee | No. 1209 WDA 2017 |

Appeal from the Order Entered August 7, 2017
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2010-9001

BEFORE: BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.: FILED NOVEMBER 08, 2018

Appellants, Jon Holbert Carter and Patricia W. Carter, his wife (referred

to herein as "the Carters"), appeal and Appellee, Consol Pennsylvania Coal

Company ("CPCC"), cross-appeals from the trial court's August 7, 2017 order denying both parties' post-trial motions and directing the prothonotary to enter judgment in favor of the Carters in the amount of $1,000,000.00.[1]  We affirm in part and reverse in part.

The trial court summarized the factual background and procedural history of this case as follows:

> In 2005[, CPCC] began an action to quiet title against the Carters [to] a tract of Pittsburgh coal and support rights containing 1.875 acres.  The matter came before the Honorable Katherine Emery who eventually ruled that title to the coal was vested in [CPCC].  However, at a moment when the presentation of the case had

---

[1] We note that "[a]n appeal from an order denying post-trial motions is interlocutory.  An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not the order denying post-trial motions."  Stahl Oil Co., Inc. v. Helsel, 860 A.2d 508, 511-12 (Pa. Super. 2004) (citation omitted).  Although the trial court in the case sub judice directed the prothonotary to enter judgment on the jury's verdict in its order denying the parties' post-trial motions, the docket reflects that the prothonotary did not do so.  See Pa.R.A.P. 301(c) ("[A] direction by the lower court that a specified judgment, sentence or other order shall be entered, unaccompanied by actual entry of the specified order in the docket, does not constitute an appealable order.  Any such order shall be docketed before an appeal is taken."); see also Comment to Pa.R.A.P. 301 ("[A]n appeal is premature where the [c]ourt directs that a judgment [of] sentence or order be entered in the docket and the prothonotary fails to do so.") (citing Friedman v. Kasser, 438 A.2d 1001 (Pa. Super. 1981)).  Nevertheless, in similar circumstances where a prothonotary has failed to enter judgment on the docket in spite of a trial court's order to do so, this Court — in the interest of judicial economy — has elected to "regard as done that which ought to have been done" and considered the appeal to be properly before it.  Stahl, 860 A.2d at 512 (citations and internal quotation marks omitted).  We further discern that, like in Stahl, the docket in the case at bar indicates that both parties received notice of the trial court's order for the prothonotary to enter judgment in the Carters' favor.  See id.  Thus, we will likewise treat this appeal as being properly before us.

been completed but before Judge Emery made her decision, the parties entered into a settlement agreement. This agreement, dated September 20, 2006, provided that for substantial consideration the Carters would quit-claim their interest in the 1.875 acre tract of coal and mining rights.[2] The agreement further provided:

> 2. [CPCC] ... will pay to [the Carters] the additional sum of $1,000,000.00 if and only if the final decision on ownership of either the coal or the support estate ... is in favor of the Carters. It is agreed and understood that both parties retain all rights of appeal.

At some later time, an addendum was executed by the parties. This document provided in relevant part:

> Neither Releasor nor Releasee shall add any new party to [the action]. The parties in good faith agree to diligently pursue resolution of the various ownership interests.

> It is understood and agreed that, as of the date of execution of the settlement, the issues as to each ownership ... is [sic] before Judge Emery and that the presentation in each case is complete.

On October 13, 2006, Judge Emery ruled that [CPCC] held fee simple title to the 1.875 acre quiet title tract of Pittsburgh coal and mining rights, including a waiver of the right of surface support. The Carters appealed. On September 10, 2008, the Superior Court, after reviewing the record, reversed the decision of the trial court, and directed entry of judgment in favor of the Carters. [Consol Pennsylvania Coal Co. v. Farmers Nat. Bank of Claysville], 960 A.2d 121 (Pa. Super. 2008).

[CPCC] petitioned for allowance of appeal to the Pennsylvania Supreme Court. With nothing before it except the record below and the [p]etition for [a]ppeal, the Supreme Court, in a per curiam order, vacated the decision of the Superior Court, and remanded the case to [the trial court] with instructions to dismiss the quiet title action for failure to join indispensable parties. [Consol

---

[2] The trial court noted that "the jury heard that immediately after execution of the [s]ettlement [a]greement, [CPCC] removed all the coal within the [q]uiet [t]itle tract and thereby avoided a costly interruption of its long wall panel." Trial Court Memorandum ("TCM"), 7/20/2017, at 4.

Pennsylvania Coal Co. v. Farmers Nat. Bank of Claysville, 969 A.2d 565 (Pa. 2009).]

[With respect to the indispensable parties identified by our Supreme Court, t]he original cloud on the title in the quiet title action was a "reservation" of a "privilege of the coal" in an 1840 deed from Joseph Carroll to Francis Moffitt.  The Carters had raised preliminary objections to the quiet title complaint[,] arguing that the heirs of Joseph Carroll were indispensable parties.[3]  These objections were overruled by the trial court and that ruling was an issue complained of in the Carters' appeal to the Superior Court.[4]

On October 19, 2010, the Carters filed a complaint against [CPCC] and then an amended complaint.  Their claim is that [CPCC] breached the settlement agreement when it argued in its [p]etition for [a]llowance of [a]ppeal that the record supported only two possible interpretations of the 1840 deed and the 1906 Pittsburgh coal severance deed: that either [CPCC] owned the quiet title tract or the heirs of Joseph Carroll did.  This, to the Carters, represented a breach of the settlement agreement because it contradicted the argument [CPCC] made to Judge Emery when the issue of the Carroll [h]eirs being indispensable was raised in preliminary objections.  This change of position constitutes bad faith on the part of [CPCC] and violates the

_____

[3] CPCC had disagreed, arguing before the trial court that "it is clear that the heirs of Joseph Carroll have no rights as it relates to the [q]uiet [t]itle [t]ract and consequently are not indispensable parties[.]"  See Carters' Amended Complaint, 12/27/2010, at Exhibit A (CPCC's Brief in Opposition to the Carters' Preliminary Objections).

[4] In the Carters' Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, they had asserted that "[t]he trial court erred by failing to sustain the [p]reliminary [o]bjection of the Carters with respect to the fact that [CPCC] failed to join necessary parties including the heirs of Joseph Carroll and others in the chain of title."  See CPCC's Motion for Judgment on the Pleadings and/or Summary Judgment, 9/26/2011, at Exhibit D (the Carters' concise statement in the previous case).  The Carters, however, explained that "[t]he Statement of Questions Involved section of the Carters' [b]rief before the Superior Court did not raise the indispensable party issue as one to be considered and the Superior Court never addressed it."  Carters' Amended Complaint at ¶ 13.

agreement that the presentation of each party's case was complete.

In December of 2016, the matter came to be heard by a jury and on December 8[, 2016,] the jury returned a verdict in favor of the Carters and against [CPCC] in the amount of $1,000,000.00. [CPCC] filed a timely motion for post-trial relief, the testimony was transcribed, each side filed briefs[,] and [the trial court] heard oral argument. The Carters also filed post-trial motions to mold the verdict to add pre[-]judgment interest and to request sanctions for an interlocutory appeal in 2011 by [CPCC] that was quashed by the Superior Court.

TCM at 1-3 (some brackets added).

The trial court ultimately denied both parties' post-trial motions, and each party subsequently filed notices of appeal. The trial court ordered the Carters and CPCC to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and they each timely complied. Thereafter, this Court sua sponte consolidated their appeals.

For ease of disposition, we will first address the following issues raised by CPCC:

1. Whether the trial court committed an abuse of discretion or error of law when it denied CPCC's request for judgment n.o.v. [("JNOV")] where the Carters did not present sufficient evidence that CPCC breached the patently unambiguous terms of the [s]ettlement [a]greement?

2. Whether the trial court committed an abuse of discretion or an error of law when it denied CPCC's request for [JNOV]. where the Carters did not present sufficient evidence that CPCC caused damages to the Carters as a direct consequence of CPCC's purported breach of the [s]ettlement [a]greement?

3. Whether the trial court committed an error of law, which led to an incorrect result when it denied CPCC's proposed jury interrogatory on causation, which required the jury to find a causal connection between CPCC's purported breach of the

[s]ettlement [a]greement and the Carters' alleged damages?

CPCC's Brief at 5.

In its first issue, CPCC claims that the trial court erred when it denied CPCC's request for JNOV where the Carters did not present sufficient evidence that CPCC breached the patently unambiguous terms of the settlement agreement. See CPCC's Brief at 5, 23.[5] CPCC asserts that the settlement agreement is patently unambiguous and the Carters' interpretation of it "should not — as a matter of law — have been submitted to the jury for interpretation and/or consideration." Id. at 26. Further, CPCC argues that if the trial court had interpreted the unambiguous language of a contractual provision in the settlement agreement in a way that did not annul another part of the agreement, it would have concluded that "CPCC could make any

_____

[5] In the argument section of CPCC's brief, CPCC contests the trial court's denial of its oral motion for nonsuit — rather than the denial of its subsequent request for JNOV — due to insufficient evidence of breach. CPCC's Brief at 23. CPCC's claim that the trial court should have granted its motion for compulsory nonsuit is moot; instead, we consider its argument regarding the sufficiency of the evidence of breach in the context of whether it is entitled to JNOV. See Whitaker v. Frankford Hosp. of City of Philadelphia, 984 A.2d 512, 517 (Pa. Super. 2009) (explaining that "[o]nce a jury verdict in favor of [the a]ppellees was entered, the issue became whether the trial court erred in failing to grant them [JNOV]") (citations omitted); Underwood ex rel. Underwood v. Wind, 954 A.2d 1199, 1206 (Pa. Super. 2008) ("Because [the] appellant proceeded with her defense following the denial of her motion for a compulsory nonsuit, 'the trial court's ruling on the [motion] was rendered moot[,]' and we do not rule on the correctness of [the] court's ruling as such. We consider [the] appellant's argument in its proper context, as an appeal from the denial of [the appellant's] motion for [JNOV] and/or a new trial, as included in her post-trial motion.") (citations omitted; some brackets added).

argument as to ownership of the quiet title tract it wanted to on appeal." Id. at 27.

> We apply the following standard of review:
>
> [T]he standard of review for an order granting or denying [JNOV] is whether there was sufficient competent evidence to sustain the verdict. We must view the evidence in the light most favorable to the verdict winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. Furthermore, [JNOV] should be entered only in a clear case, where the evidence is such that no reasonable minds could disagree that the moving party is entitled to relief. Review of the denial of [JNOV] has two parts, one factual and one legal:
>
>> Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded evidence at trial, we will not substitute our judgment for that of the finder of fact.

Underwood, 954 A.2d at 1206 (citation omitted).

> Moreover, with respect to contracts, our Supreme Court has explained:
>
> A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004) (internal citations omitted).

In addition, "it is axiomatic that contractual clauses must be construed, whenever possible, in a manner that effectuates all of the clauses being considered. … [O]ne part of a contract cannot be so interpreted as to annul another part and … writings which comprise an agreement must be interpreted as a whole." Lenau v. Co-eXprise, Inc., 102 A.3d 423, 430 (Pa. Super. 2014) (internal citations, brackets, and quotation marks omitted).

Here, in its petition for allowance of appeal to our Supreme Court, CPCC stated, "The only issue was whether the coal retained in 1840 included the Pittsburgh Vein (as opposed to some other coal deposit).[6] If it did, neither [CPCC] nor the Carters obtained it; if it did not, [CPCC] obtained it when the 1906 coal deed conveyed all of the Pittsburgh Vein of coal except the coal retained in 1840." CPCC's Petition for Allowance of Appeal, 12/24/2008, at 4; see also id. at 15 n.4 (noting that "the Superior Court did not consider the fact that the coal in question … had already been reserved to the grantor in the 1840 deed[,]" i.e., Joseph Carroll). As mentioned earlier, this argument contradicted CPCC's prior position, where it insisted before the trial court that "the heirs of Joseph Carroll have no rights as it relates to the [q]uiet [t]itle [t]ract and consequently are not indispensable parties." See footnote 3, supra.[7] We reiterate that our Supreme Court subsequently vacated the decision of this Court directing judgment in favor of the Carters, and remanded the case to the trial court with instructions to dismiss the quiet title action for failure to join indispensable parties, naming specifically the successors in interest to the Carrolls as indispensable herein.

_____

[6] By way of background, "the [q]uiet [t]itle [t]ract consists of coal in the Pittsburgh Vein of Coal through which [CPCC] intend[ed] to longwall mine." See, e.g., Consol Pennsylvania Coal Company, 960 A.2d at 124 (quoting the trial court opinion).

[7] It also contradicted CPCC's representations before this Court. See Consol Pennsylvania Coal Company, 960 A.2d at 129 ("The parties do not dispute that when Margaret Simpson[, the grantor in the 1906 deed,] acquired ownership of the land at issue, she received a complete ownership of all the estates in, under and above the land.").

Nevertheless, CPCC maintains that it did not breach the settlement agreement. Specifically, it explains:

> [T]he [s]ettlement [a]greement clearly stated that "[i]t is understood and agreed that, as of the date of the execution of the settlement, the issues as to each ownership in each case [are] before Judge Emery and that the presentation in each case is complete." The [s]ettlement [a]greement further provides that "[i]t is agreed and understood that both parties retain all rights of appeal." The plain language from these two provisions is patently unambiguous.
>
> Taken together, these provisions clearly state that neither party was permitted to augment their presentation of the case before Judge Emery, and the parties reserved "<u>all</u>" rights of appeal. Accordingly, CPCC did not waive its right to raise any argument as to ownership of the quiet title tract before the Superior Court or the Supreme Court as the Carters contend. Without question, if CPCC by virtue of signing the [s]ettlement [a]greement waived its right to raise any argument it wanted to as to ownership of the quiet title tract on appeal including the idea that the Carroll heirs are purportedly an indispensable party, then the provision of the [s]ettlement [a]greement wherein both parties reserved "<u>all</u>" rights of appeal would be rendered inoperative. It is paradoxical to conclude that CPCC reserved "<u>all</u>" rights of appeal, but simultaneously waived its right to raise a particular argument on appeal.

CPCC's Brief at 24-25 (footnote and internal citations omitted; emphasis in original; some brackets added).

We reject CPCC's argument. As the Carters discern, CPCC's argument "fails to consider the numerous other provisions in the [s]ettlement [a]greement likewise due enforcement which defined the ground rules for the appellate proceedings." Carters' Reply Brief at 10-11. In particular, the settlement agreement also provides that "[n]either Releasor or Releasee shall add any new party to [the] action except both parties shall have the right to

add any successor or assign[,]" and that "[t]he parties in good faith agree to diligently pursue resolution of the … ownership interests." See Settlement Agreement at Exhibit B. Further, the Carters agreed therein to deliver a letter to the Pennsylvania Department of Environmental Protection ("DEP") advising that "they no longer have any claims, right, title or interest in said coal and that all of their said interest has been transferred to [CPCC]" and it may mine the quiet title tract. See id. at Exhibit A. In light of the language in the settlement agreement prohibiting new parties from being added to the action, promising good faith, and having the Carters represent to the DEP that CPCC may now mine the coal in question, the settlement agreement does not accord with allowing CPCC to raise the possibility on appeal, for the first time and counter to its prior position, that the Carroll heirs — or some other person — may own the coal. Thus, we disagree with CPCC that the settlement agreement is patently unambiguous, and determine that the trial court did not err in denying CPCC's request for JNOV due to insufficient evidence of breach.

In its second issue, CPCC challenges whether the trial court should have entered JNOV in its favor "where the Carters did not present sufficient evidence that CPCC caused damages to the Carters as a direct consequence of CPCC's purported breach of the [s]ettlement [a]greement[.]" CPCC's Brief at 5.[8] CPCC argues that our Supreme Court provided no opinion explaining

_____

[8] CPCC similarly avers in its argument section that the trial court erred in denying its oral motion for nonsuit due to insufficient evidence of a causal

why it found the Carrolls to be indispensable parties, and therefore "it is mere speculation for the parties to guess how the Supreme Court arrived at its conclusion...." CPCC's Reply Brief at 9. CPCC says that the parties do not dispute that there are three possible explanations for our Supreme Court's decision: (1) the Court reached its finding sua sponte,[9] (2) it was "based upon the numerous times in the Reproduced Record that the Carters raised the issue of the Carroll heirs being a purported indispensable party," or (3) the Court made the finding due to "the statements made by CPCC in its [p]etition for [a]llowance of [a]ppeal." See id. at 10-11.[10] As two of the three possible explanations mean that CPCC did not cause any damages to the Carters by its

_____

connection. See CPCC's Brief at 27. For the reasons already set forth above, we consider this claim in the context of whether CPCC should have been granted JNOV. See footnote 5, supra.

[9] See Pa.R.C.P. 1032(b) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or that the indispensable party be joined, but if that is not possible, then it shall dismiss the action."); Orman v. Mortgage I.T., 118 A.3d 403, 406 (Pa. Super. 2015) ("Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction. Failure to join an indispensable party goes absolutely to the court's jurisdiction and the issue should be raised sua sponte.") (citations and internal quotation marks omitted).

[10] The Carters counter that "it was CPCC's attorney who introduced the concept of there being three options which possibly could have led the jury to find a causal connection between what CPCC argued in its [b]rief and the decision of the Supreme Court." Carters' Reply Brief at 20-21. As discussed further infra, they maintain that there is "no doubt why the Supreme Court ruled as it did." Id. at 25.

breach, CPCC states that the Carters' "claimed damages are too remote and speculative to be recovered as a matter of law...." Id. at 11.

> This Court has explained:
>
> In order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss.
>
>> Where one party to a contract, without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provides otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.

Logan v. Mirror Printing Co. of Altoona, Pa., 600 A.2d 225, 226 (Pa. Super. 1991) (citations omitted; emphasis in original). Further, "the test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages.... Thus, damages are speculative only if the uncertainty concerns the fact of damages rather than the amount." Id. at 227 (citation omitted; emphasis in original).

We determine that the Carters presented sufficient evidence of a causal connection between CPCC's breach and the Carters' damages. Viewing the evidence in the light most favorable to the Carters as the verdict winners, and giving them the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences, see Underwood, 954 A.2d at 1206, the statements made by CPCC in its petition for allowance of

appeal constitute the most reasonable and probable impetus for our Supreme Court's ruling. Further, the Carters observe that CPCC "seeks to benefit from its own breach by placing the Carters in the untenable position of having to prove, in fact, why the Supreme Court ruled as it did. The jury was clearly within the scope of its authority to infer that the repeated references to the Carroll [h]eirs in the [p]etition inveigled the Supreme Court to rule as it did." Carters' Reply Brief at 25. Indeed, the Carters explain that they presented evidence at trial "juxtapos[ing] the relevant portions of [CPCC's petition and the Supreme Court's per curiam order], and said that the Supreme Court necessarily understood what CPCC was hinting at because its [o]rder specifically recited 'the successors in interest to Joseph and Eliza Carroll are indispensable herein....'" Id. at 13. Our common sense agrees.

Moreover, we struggle with CPCC's two other possible explanations. First, "sua sponte" by definition means, "[w]ithout promoting or suggestion; on its own motion." Black's Law Dictionary 1650 (10th ed. 2014). In the case sub judice, evidence shows that CPCC suggested in its petition that the Carroll heirs were indispensable parties. See CPCC's Petition for Allowance of Appeal at 4 ("The only issue was whether the coal retained in 1840 included the Pittsburgh Vein (as opposed to some other coal deposit). If it did, neither [CPCC] nor the Carters obtained it; if it did not, [CPCC] obtained it when the 1906 coal deed conveyed all of the Pittsburgh Vein of coal except the coal retained in 1840."); see also id. at 15 n.4 (noting that "the Superior Court did not consider the fact that the coal in question ... had already been reserved

- 13 -

to the grantor in the 1840 deed[,]" i.e., Joseph Carroll). Thus, in light of CPCC's suggestion, we consider it inconsistent to conclude that our Supreme Court raised the issue on its own.

Second, setting aside the statements made in CPCC's petition, it seems unlikely that our Supreme Court would have read the Reproduced Record, identified that the Carters had previously raised the issue of the Carroll heirs being an indispensable party before the trial court, fixated on this seemingly settled issue, determined that the trial court had erred in reaching this conclusion even though the parties purportedly had not raised or argued that decision on appeal in any kind of detail, and then issued a brief, inexplicit per curiam order vacating and remanding the case to the trial court with instructions to dismiss the quiet title action for failure to join indispensable parties.

More troubling, however, CPCC supports its argument that our Supreme Court's finding could have been "based upon the numerous times in the Reproduced Record that the Carters raised the issue of the Carroll heirs being a purported indispensable party[,]" with the following illustration:

> For example, the Carters asserted the Carroll [h]eirs are an indispensable party when the Carters filed their brief in opposition to CPCC's [p]etition for [a]llowance of [a]ppeal with the Supreme Court. Specifically, the Carters alleged, "[t]he Carters filed Preliminary Objections alleging[,] inter alia[,] that parties associated with the 1840 deed were indispensable parties and needed to be joined because the 1840 deed necessarily had to be interpreted."

CPCC's Reply Brief at 10-11, 11 n.3 (emphasis and some brackets added; citation omitted). CPCC fails to acknowledge that the Carters made this assertion to respond to the statements made by CPCC in its petition. See Carters' Brief in Opposition to CPCC's Petition for Allowance of Appeal, 1/8/2009, at 1 ("[CPCC's] [p]etition for [a]llowance of [a]ppeal is devoid of any reference to the record showing when or where it argued that only someone other than the Carters could own the [q]uiet [t]itle [t]ract."); id. at 7-10 (asserting that CPCC "waived, and should be estopped from asserting, its argument that the Superior Court could not direct a judgment in favor of the Carters") (unnecessary capitalization and emphasis omitted). In other words, the Carters did not make the above-stated reference to its preliminary objections indiscriminately and without prompting; such discussion came because of CPCC's petition.[11] Accordingly, we are not persuaded by CPCC's arguments, and discern that the trial court properly denied its request for JNOV due to insufficient evidence of causation.

In its third issue, CPCC argues — in the alternative — that it is "entitled to a new trial because the trial court erred by failing to include a jury interrogatory on causation as a necessary element to a breach of contract action." CPCC's Brief at 35 (unnecessary emphasis and capitalization omitted). Specifically, the interrogatory at issue asked, "[D]o you find that

_____

[11] We reiterate that the Carters had not raised the issue of the Carroll heirs being indispensable parties when their appeal was before this Court. See footnote 7, supra.

[CPCC's] breach of the [s]ettlement [a]greement caused the Pennsylvania Supreme Court to rule as it did?" See id. at 38 (citing Interrogatories to the Jury, 12/8/2016, at 2). According to CPCC, "the jury was permitted to find CPCC liable for $1,000,000.00 in damages by only determining the question of whether CPCC breached the [s]ettlement [a]greement and not whether the purported breach caused the Carters' damages." Id. at 40. CPCC maintains that "[g]iven the three possible explanations entered into evidence for why the Supreme Court ruled as it did, it was error for the trial court to permit the jury to award damages without making a finding relative to causation." CPCC's Reply Brief at 16.

> This Court has explained:
>
> We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

Underwood, 954 A.2d at 1206 (citations omitted). We also acknowledge that, "[g]enerally, a trial judge … may grant or refuse a request for special findings on the basis of whether such would add to the logical and reasonable understanding of the issue. We will not disturb a trial judge's decision to grant or refuse the request absent an abuse of discretion." Fisch's Parking, Inc.

v. Independence Hall Parking, Inc., 638 A.2d 217, 223 (Pa. Super. 1994) (citations omitted).

Here, the trial court explained that "[t]he jury was instructed that damage must result from a breach, and [includes] only those damages that were reasonably foreseeable from the breach." TCM at 5-6. Thus, it concluded that "[w]hether or not a specific interrogatory was propounded to the jury on that part, the record shows that the jury was adequately instructed." Id. at 6. Interestingly, CPCC concedes that the trial court effectively charged the jury. Specifically, it states that "while [the trial court] adequately explained the concept of causation when [it] charged the jury such that the jury should have understood the need to find a causal connection between CPCC's purported breach and the Carters' 'resultant damages,' nonetheless, the jury was not asked to make such a finding on the verdict slip." CPCC's Reply Brief at 16. It is well-established that "[t]he law presumes that the jury will follow the instructions of the court." Maya v. Johnson and Johnson, 97 A.3d 1203, 1222 (Pa. Super. 2014) (citations and quotation marks omitted). Thus, we discern no abuse of discretion and decline to remand this matter for a new trial. CPCC is not entitled to relief.

We turn now to the following issues raised by the Carters on appeal, which we have also reordered for ease of disposition:

> 1. Did the trial court commit an abuse of discretion by granting the coal company's [m]otion for [p]artial summary judgment to dismiss the Carters' punitive damages claim?

- 17 -

> 2. Did the trial court commit an abuse of discretion by failing to award the Carters pre-judgment interest at the legal rate of six (6%) percent from the date of the contract's breach?

Carters' Brief at 4.

In their first issue, the Carters argue that the trial court abused its discretion by granting CPCC's motion for partial summary judgment on their claim for punitive damages. See Carters' Brief at 17. The Carters argue that the trial court should not have granted CPCC's motion for partial summary judgment as to punitive damages for two main reasons. First, they claim that — at the time the trial court granted partial summary judgment as to punitive damages — their fraud claim remained and "[p]unitive damages are always available under a fraud claim." Id.[12] Second, they contend that "the ruling was error because the evidence presented in the Carters' [r]esponse to the [m]otion for [p]artial [s]ummary [j]udgment was sufficient to allow a jury to award punitive damages." Id. We deem this issue moot.

At trial, CPCC moved for a nonsuit on the Carters' fraud claim, which the trial court granted. See N.T. Trial, 12/7/2016, at 22. The Carters' fraud claim "involved not only fraud in the inducement, given the fact that CPCC failed to disclose to the Carters facts which were important to them in entering into the [s]ettlement [a]greement, but also fraud in the execution, since CPCC fraudulently violated the contractually agreed-upon terms by emphasizing the

_____

[12] In contrast, both parties acknowledge that punitive damages are not available in breach of contract actions. Carters' Reply Brief at 31 (acknowledging that "an award of punitive damages is limited to tort actions"); CPCC's Brief at 44 (observing that "punitive damages cannot be awarded for breach of contract").

indispensability of the Carroll heirs before the Pennsylvania Supreme Court."
See Carters' Response to Motion for Partial Summary Judgment, 2/5/2015, at
4; see also N.T. Trial, 12/7/2016, at 13 ("With respect to the fraud, it's
correct, we are pursuing a fraud in the [] execution claim, in addition to an
inducement claim.  But it's both execution and inducement.").[13]  The Carters
claim that the jury "may have awarded punitive damages based on the fraud
claim due to the improper and misleading activities of CPCC's agents in
manipulating the Carroll heir issue had the trial court not entered partial
summary judgment on that issue."  Carters' Brief at 20-21 (footnote omitted).
Problematically though, their fraud claim was dismissed at the close of their
case in chief.  As CPCC discerns, "[a]fter the trial court granted CPCC's
[m]otion for [n]onsuit of the Carters' fraud claim, the Carters' sole remaining
cause of action was for breach of contract.  Beyond doubt, punitive damages
are awarded in tort actions, not for breach of contract."  CPCC's Brief at 43
(citations and internal quotation marks omitted).

At the outset, we note that the Carters did not raise whether the trial
court erred in granting the nonsuit on their fraud claim in their Rule 1925(b)
statement.  See Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the

_____

[13] Our Supreme Court has described fraud in the execution as occurring where
"a term was fraudulently omitted from the contract," and fraud in the
inducement of a contract as taking place where "an opposing party made false
representations that induced the complaining party to agree to the contract."
Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 205 (Pa. 2007) (citations
omitted).

Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").[14] Nevertheless, even if properly preserved in their Rule 1925(b) statement, the Carters would not convince us that the trial court erred. In moving for the trial court to dismiss the Carters' fraud claim, CPCC made the following arguments as to why it fails:

> I think if you look at their amended complaint, and specifically, in Paragraphs 29 through 35, which is the fraud count, they are pleading, attempting to plead a case of fraud in the inducement. It clearly states in Paragraph 35, "As a result of being fraudulently induced to enter the settlement agreement, the Carters have suffered monetary damage together with the loss of use of the money and loss of interest.["]
>
> Judge, you ruled from the outset that parol evidence was not going to be violated, and there would not be any testimony pertaining to any discussions or what had happened pre[-]execution of the damage settlement agreement dated September 22, 2006. You upheld our objection when the [Carters] attempted to introduce some extrinsic evidence.
>
> As such, Judge, the [Carters] were unable to offer any evidence of any testimony, any conversations, anything, of a prior fraudulent misrepresentation, which is one of the key elements of fraud in the inducement. They also were not able to offer any evidence that there was a justifiable reliance on any prior fraudulent misrepresentation. Because again, you excluded any

_____

[14] We disagree with the Carters that they preserved the issue of whether the trial court properly granted the nonsuit on fraud because "any reference to the denial of the right to pursue punitive damages necessarily included the fraud claim." Carters' Reply Brief at 31; see also Carters' Rule 1925(b) Statement, 9/6/2017, at ¶ 2 ("The [t]rial [c]ourt erred by granting summary judgment on the Carters' claims for punitive damages. The evidence showed that a dispute of material fact existed as to whether CPCC deliberately manipulated the joinder of the Carroll [h]eirs in the quiet title action and then knowingly, in violation of the [s]ettlement [a]greement, used that issue before the Pennsylvania Supreme Court in its [p]etition for [a]llowance of [a]ppeal to procure a dismissal of the case.").

testimony that predated the settlement agreement because of the parol evidence rule.

Without that testimony, and also, because of the fact that there's an integration clause negotiated by both parties, signed off by both parties, a fraud in the inducement claim cannot proceed. It's not a viable cause of action, unless you have those first two elements of fraud in the inducement. We don't have them here. So it's our position, Judge, that their claim for fraud in the inducement must be dismissed as a matter of law. Because there's no testimony of a fraudulent representation, nor is there any testimony of a reliance upon any prior misrepresentation. The case law is very clear. It's in our trial brief that if there's an integration clause that a claim for fraud in the inducement cannot stand.

Now, I heard something yesterday that surprised me that suggested that they pled a claim for fraud in the execution. Which I think a fair reading of Paragraphs 29 through 35, there is no suggestion of fraud in the execution in this case. It's not pled in the amended complaint.

Let's assume for a moment that somehow you infer that, because there's a lot of inferences being raised here that there's a fraud in execution claim. They must plead in this case, and then go on to prove, that there was some sort of mistake in the terms of the agreement. They must be able to offer testimony that the written document, this settlement agreement, is not the expression or the intent of the parties. Something was omitted.

And that is the key part of this, Judge, if they're going to try to suggest that there's a fraud in the execution claim, they have to suggest an[d] offer testimony that something was omitted from the settlement agreement. Here, it's actually to the contrary. There is no allegation that anything was omitted from the settlement agreement. Their argument is that it's clear. We can't add another party; and ... the presentation before Judge Emery is complete; and their interpretation of that is that you can't make any legal argument different than what you may have made at the lower court level. So here, Judge, they can't have a fraud in the execution claim, because they never claimed that something was omitted from the settlement agreement.

Probably, more importantly that would be very detrimental to the case, let's assume for a moment that they pled it, you believed that there was something there, and that the jury found fraud in

the execution. The only remedy for that is that the contract is void. If the contract is void, there's nothing to talk about, there's no damage. So it's our position, Judge, that on the fraud claim, it should be dismissed.

They didn't -- there can't be a fraud in the inducement because of the integration clause. And they didn't plead even a fair reading of that complaint[,] didn't plead fraud in the execution, and it wouldn't stand anyway, because there's never been an argument that any material fact that would be in the settlement agreement was omitted. So on the fraud claim, we argue and request that this [c]ourt dismiss the fraud claim against [CPCC], because they have not met their burden.

See N.T. Trial, 12/7/2016, at 4-8.

The Carters do not adequately address or proffer authority to rebut these alleged problems with their fraud claim, which the trial court must have determined had some degree of merit as it immediately granted CPCC's motion for nonsuit.[15] It is well-established that we "will not become counsel for an appellant and develop arguments on an appellant's behalf." *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (citation omitted). As the Carters failed to establish fraud at trial and did not preserve this issue or adequately develop it on appeal, we determine that whether the trial court abused its discretion in granting summary judgment in favor of CPCC as to punitive damages is moot.

_____

[15] It remains somewhat unclear as to why the trial court granted the nonsuit for fraud. See N.T., 12/7/2016, at 22-23 (providing no reason for why CPCC's motion for nonsuit on the fraud count was granted). The trial court did not provide an explanation for why it decided to grant the nonsuit in its July 21, 2017 memorandum or Rule 1925(a) opinion, likely because the Carters did not challenge the entry of the nonsuit in post-trial motions or in their Rule 1925(b) statement.

- 22 -

Notwithstanding, in an attempt to skirt the dismissal of their fraud claim at trial, the Carters take a new approach, purporting that they were limited in their ability to prove fraud at trial due to the trial court's earlier granting of a motion in limine prohibiting the Carters from introducing evidence pertaining to the Carroll family cemetery and a related quit-claim deed.[16, 17]  On the last page of their principal brief, the Carters vaguely and offhandedly remark that the trial court's "decision [to grant summary judgment on punitive damages] was essentially the grant of a [m]otion in [l]imine preventing the Carters from introducing to the jury evidence of CPCC's negotiations with the Carroll heirs concerning the cemetery association."  Carters' Brief at 22-23.  They begin expanding on this theory in the first page of their reply brief, averring that "[t]he reality is that the trial court's grant of CPCC's motion in limine

_____

[16] The Carters do not indicate — nor could we find — where in the voluminous record the trial court granted this motion in limine.  See Pa.R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears[.]") (citation omitted).  Thus, we are unsure why the trial court granted it.

[17] For context, the Carters contend that CPCC "sought to form a cemetery association to aid the Carroll [h]eirs in preserving a family burial ground, which settlement included CPCC['s] obtaining a quit-claim deed from the Carroll [h]eirs for the coal...."  See Carters' Reply Brief at 32-33.  The Carters say they "would have argued to the jury that the refusal to join the Carroll [h]eirs ... was intertwined with a deliberate CPCC plan to surreptitiously obtain from the Carroll [h]eirs a quit-claim deed for the cemetery tract which had the effect of terminating any license Carroll may have retained in 1840 to access the [tract.]"  Id. at 33.  CPCC, however, claims that "the quiet title tract is not the same property as the one for which CPCC negotiated an agreement with the Carroll heirs."  CPCC's Brief at 53 (emphasis omitted).

prohibiting the Carters from presenting evidence of CPCC's actions with respect to the formation of a cemetery association for the Carroll [h]eirs made it impossible for the Carters to prove the fraud which would justify an award of punitive damages." Carters' Reply Brief at 30. By the close of their reply brief, the Carters conclude that "it was error for the [t]rial [c]ourt to grant the various [m]otions, including the punitive damage summary judgment motion, preventing the Carters from presenting evidence at trial which would justify a claim for fraud and consequently, punitive damages." Id. at 35.

Initially, we note that this argument is different from the issue presented in the Carters' Rule 1925(b) statement, their statement of the questions involved, and the argument section of their principal brief. Whether the trial court erred in refusing to allow evidence to support the Carters' fraud claim is a separate issue from whether the trial court abused its discretion in granting summary judgment in favor of CPCC on punitive damages.[18] If the evidence of the Carroll family cemetery and associated quit-claim deed were relevant to proving the Carters' fraud claim, as the Carters allege, the trial court's granting of summary judgment as to punitive damages would not have necessarily precluded such evidence from being admitted. As such, this issue is waived. See Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this

_____

[18] Further, the Carters do not articulate how the issue concerning the motion in limine is somehow subsidiary to the issue of punitive damages. See Samuel, 102 A.3d at 1005 (stating that this Court "will not become counsel for an appellant and develop arguments on an appellant's behalf").

- 24 -

paragraph (b)(4) are waived."); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); Commonwealth v. Basemore, 744 A.2d 717, 726-27 (Pa. 2000) ("A reply brief … is an inappropriate means for presenting a new and substantively different issue than that addressed in the original brief."). Nonetheless, even if not waived, the Carters do not specifically explain how this additional evidence would remedy the flaws with their fraud claim that CPCC successfully identified to the trial court at the time of the nonsuit. Accordingly, no relief is due.

In their second issue, the Carters advance that "the verdict should be molded to include pre-judgment interest." Carters' Brief at 10 (emphasis and unnecessary capitalization omitted). They argue that "[p]re-judgment interest should be awarded as a matter of right if a party breached a contract to pay a definite sum of money stated in the contract." Id. at 9. According to the Carters, "[t]he jury found that CPCC breached the contract on the date it filed its [p]etition for [a]llowance to [a]ppeal with the Pennsylvania Supreme Court[,]" and "[t]he contingent payment of $1,000,000.00 was the sum due under the contract." Id. The Carters state that CPCC "has had the benefit of the interest on the $1,000,000.00 for a period of nearly eight (8) years[,]"

and argue that CPCC should not be permitted to benefit from its breach. Id. at 15-16.[19]

Before delving into this issue, we acknowledge that "[o]ur review of an award of pre-judgment interest is for abuse of discretion." Cresci Const. Services, Inc. v. Martin, 64 A.3d 254, 258 (Pa. Super. 2013) (citation omitted). However, "a court has discretion to award or not award pre[-]judgment interest on some claims, but must or must not award pre[-]judgment interest on others." Id. (citations, internal quotations marks, and original brackets omitted).

> In more detail, our Supreme Court has explained,
>
> even where a party's right to the payment of interest is not specifically addressed by the terms of a contract, a nonbreaching party to a contract may recover, as damages, interest on the amount due under the contract; again, this Court refers to such interest as pre[-]judgment interest. The purpose of awarding interest as damages:
>
>> is to compensate an aggrieved party for detention of money rightfully due him or her, and to afford him or her full indemnification or compensation for the wrongful interference with his or her property rights. The allowance of interest as an element of damages is not punitive, but is based on the general assumption that retention of the money benefits the debtor and injures the creditor.
>
> Many jurisdictions have enacted statutory provisions for interest as damages. In 1988, in Fernandez [v. Levin, 548 A.2d 1191

_____

[19] The Carters note that "[u]nder the [s]ettlement [a]greement, payment of the contingent $1,000,000.00 was due thirty days from the final decision on ownership." Carters' Brief at 14 n.2 (citations omitted). They claim that the date of the breach was the filing of the petition on December 24, 2008, and therefore the obligation to pay interest began on January 23, 2009. Id. CPCC does not contest this specific date, but instead argues that the Carters should receive no pre-judgment interest at all. See infra.

(Pa. 1988),] this Court adopted Section 354 of the Restatement (Second) of Contracts as the law of this Commonwealth with respect to the recovery of interest as damages in breach of contract actions. Section 354, titled "Interest As Damages," provides:

> (1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

> (2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

Restatement (Second) of Contracts § 354. In adopting Section 354, we stated:

> For over a century it has been the law of this Commonwealth that the right to interest upon money owing upon contract is a legal right. That right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment.

With regard to pre[-]judgment interest, we have explained, interest has been defined to be a compensation allowed to the creditor for delay of payment by the debtor, and is said to be impliedly due whenever a liquidated sum of money is unjustly withheld. However, as prerequisites to running of pre[-]judgment interest, the debt must have been liquidated with some degree of certainty and the duty to pay it must have become fixed. Thus, even where the terms of a contract do not expressly provide for the payment of interest, a nonbreaching party has a legal right to recover interest, as damages, on a definite sum owed under the contract.

Furthermore, as is the case with an award of contractual interest, an award of pre[-]judgment interest under Section 354(1) is not subject to a court's discretion.

TruServ Corp. v. Morgan's Tool & Supply Co., Inc., 39 A.3d 253, 263-64

(Pa. 2012) (internal footnotes, quotation marks, original brackets, and some

citations omitted). Additionally, in claims arising out of a contractual right,

"[i]nterest must be awarded notwithstanding the good faith of the party contesting the claim." Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 590 (Pa. Super. 2003) (citation omitted).

In denying the Carters' request for pre-judgment interest, the trial court reasoned that "the bonus payment of $1,000,000.00 was due to the Carters 'if and only if the final decision on ownership of either the coal or the support estate … is in favor of the Carters[.'] That event has still not happened." TCM at 8. In other words, the trial court determined that "interest is not due on the terms of the contract, because the bonus was to be only payable when certain things happened, but they did not and have not." Id. Moreover, it noted that "[b]ecause [CPCC] never agreed that it breached the contract, its duty to pay did not arise until the jury rendered its verdict." Id.

Similarly, CPCC asserts that "[t]he final decision as to ownership in this case was not in the Carters' favor. … CPCC could not have unjustly withheld damages from the Carters when CPCC's obligation to make the $1,000,000.00 bonus payment never arose." CPCC's Brief at 63 (emphasis in original). It further advances that "CPCC did not believe that it breached the [s]ettlement [a]greement when it filed its [p]etition for [a]llowance of [a]ppeal…. CPCC should not be held liable for pre[-]judgment interest where CPCC could not have known it breached the [s]ettlement [a]greement nor could CPCC have known it was unjustly withholding damages from the Carters." Id. at 64-65.

We disagree with the reasoning of the trial court and CPCC, and conclude that the Carters should receive pre-judgment interest. First, although the Supreme Court did not issue a final decision on ownership, it did not address that question because of the improper arguments made by CPCC. As the Carters observed, CPCC "filed a [p]etition for [a]llowance of [a]ppeal containing arguments which the jury said breached the [s]ettlement [a]greement and rendered the Carters' potential of receiving the bonus payment impossible...." Carters' Reply Brief at 29; see also Carters' Brief at 16 ("Rather than adhering to the terms of the contract and seeking a final decision on the merits of ownership, CPCC filed a [p]etition which indubitably sought relief in the form of a dismissal for failure to join indispensable parties."). In addition, we reiterate that this Court made the last decision on the merits of ownership in favor of the Carters. See Consol Pennsylvania Coal Co., 960 A.2d at 133 (reversing the judgment entered in favor of CPCC and remanding with directions for entry of judgment in favor of the Carters). Second, whether CPCC believed it breached the settlement agreement is irrelevant, as "[i]nterest must be awarded notwithstanding the good faith of the party contesting the claim." See Pittsburgh Const. Co., supra. The Carters persuasively discern that "if the subjective position of the breaching party was the dispositive factor, an award of pre-judgment interest would likely never occur." Carters' Brief at 15 (footnote omitted). Accordingly, we reverse the part of the trial court's order denying pre-judgment interest to the

Carters, and remand solely for the trial court to award pre-judgment interest on the $1,000,000.00 from 30 days after the breach, i.e., January 23, 2009.

In sum, the trial court did not err in denying CPCC's request for JNOV due to insufficient evidence of breach and causation, nor did it err by not including a jury interrogatory on causation. With respect to the Carters, no relief is due regarding their punitive damages claim; however, they should receive pre-judgment interest on the $1,000,000.00 from January 23, 2009.

Order affirmed in part, and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2018